IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA MARIE ROUSSELO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 16-2235-JWL |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered AFFIRMING that decision.

**I.      Background**

Plaintiff applied for DIB, ultimately alleging disability beginning July 23, 2010. (R. 15, 24, 34). Plaintiff exhausted proceedings before the Commissioner, and now seeks

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

judicial review of the final decision denying benefits. She argues that the Administrative Law Judge (ALJ) failed to adequately evaluate the medical evidence, that the Appeals Council failed to adequately evaluate the new and material evidence provided to it and thereby erred in failing to remand for further consideration by the ALJ, and that the ALJ further erred in finding that Plaintiff's allegations of symptoms were not credible.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the Commissioner's handling of this case, and it begins its analysis with consideration of the disposition by the Appeals Council.

## II.     The Appeals Council's Disposition

After receiving the ALJ's decision in this case, Plaintiff requested that the Appeals Council review the hearing decision, submitted a brief to the Appeals Council providing her allegations of error in the ALJ's decision, and provided 88 pages of medical evidence for the Council's consideration.  (R. 9-11, 272-79, 390-477).  After receiving Plaintiff's brief and the additional evidence, the Council provided a "Notice of Appeals Council Action" to Plaintiff in which they explained that it found no reason under the rules of the agency to review the ALJ's decision, and denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  (R. 1).  The Council included an "AC [Appeals Council] Exhibits List" listing all of the additional evidence provided by Plaintiff (R. 4), and an "Order of Appeals Council" also listing all of the

4

additional evidence provided by Plaintiff, and stating that it was making that evidence a part of the administrative record. (R. 5). In its notice, the Appeals Council stated that it had considered "the reasons you disagree with the [hearing] decision and the additional evidence listed on the enclosed Order of Appeals Council." (R. 2). The Council "concluded that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision." Id.

As Plaintiff acknowledges, "[w]hen the Appeals Council accepts additional evidence, that is an implicit determination that it is qualifying new evidence, requiring the Appeals Council to consider it," and a reviewing court to include it in its review of the ALJ's decision. (Pl. Br. 13) (quoting Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011). To the extent that Plaintiff claims the Council did not consider the new, material evidence submitted to it, that claim is belied by the Council's explanation that it had considered the additional evidence. (R. 2). This court's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter," and Plaintiff provides no basis to depart from that general practice. Hackett, 395 F.3d at 1173.

Plaintiff's real complaint is that the Council did not properly evaluate the new and material evidence, because it did not remand Plaintiff's claim to the ALJ for further proceedings. (Pl. Br. 13) (citing Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003)). Plaintiff argues that the new, material evidence was so "significantly probative" that the "Council erred by not reviewing said evidence and remanding the claim to the ALJ" for a new hearing and consideration of the new evidence. Id. at 14. Again, the

5

Appeals Council's notice makes clear that it considered--reviewed--the evidence, and Plaintiff does not seriously argue otherwise. Rather, she disagrees with the Council's disposition of her claim. She argues that "it is obvious that the aforementioned evidence could have and should have changed the outcome of the ALJ's decision; thus, the Appeals Council erred in failing to review and remand Plaintiff's disability claim." Id.

But, the court is without jurisdiction to review the alleged errors of the Appeals Council in the circumstances of this case. The court's jurisdiction to decide a suit against the Social Security Administration is delimited by the Social Security Act. Weinberger v. Salfi, 422 U.S. 749, 757-64 (1975). Salfi instructs that section 405(g) of the Act is the exclusive basis for subject matter jurisdiction over Plaintiff's complaint. Salfi, 422 U.S. at 757. Section 405(g) provides the court with jurisdiction to review the "final decision" of the Commissioner. Here, because the Appeals Council denied review of the ALJ's decision, the ALJ's decision, not the Appeals Council's decision is the "final decision" of the Commissioner subject to judicial review by the District Court. 20 C.F.R. § 404.981. Therefore, the Council's decision to deny review is not reviewable by the court. C.f., Martinez v. Barnhart, 444 F.3d 1201, 1204-05 (10th Cir. 2006) (finding the plaintiff was correct to concede that the court did not have jurisdiction to review an Appeals Council's remand order).

But, Plaintiff is not without recourse. As Plaintiff acknowledges, evidence accepted and considered by the Appeals Council--as was the evidence on the "Order of

6

Appeals Council" in this case--will be included in this court's review of the ALJ's decision. (Pl. Br. 13) (citing Krauser, 638 F.3d at 1328); see also Martinez, 444 F.3d at 1208 (records accepted and considered by the Appeals Council "are a 'part of the administrative record to be considered by this court when evaluating the ALJ's decision.'") (quoting O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)) (brackets omitted). Plaintiff's argument that "the ALJ should have had the opportunity to review the new and material evidence" (Pl. Br. 15) is without merit.

## III. Evaluation of the Medical Evidence

Plaintiff claims the ALJ and the Commissioner failed to evaluate the medical evidence adequately. (Pl. Br. 10). She argues that the ALJ's step two finding of a severe disorder of the spine is "demonstrative of the manner in which the ALJ minimized and mischaracterized the medical record with regard to the severity of Plaintiff's degenerative disc disease." Id. She argues that the alleged error resulted from the ALJ's failure "to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts," as required by the Tenth Circuit in Thompson v. Sullivan, 987 F.2d 1482, 1493, (10th Cir. 1993) and Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987). (Pl. Br. 10-11). She argues that the ALJ's characterization of the results of Plaintiff's examinations as "grossly normal" is belied by

> specific clinical findings of: tenderness in the right SI region, very limited flexion and positive straight leg raise testing on the right with mild sensory changes in the right leg in an L5 distribution (Tr. 328-29, Dr. Clough); limited range of motion, positive straight leg raise testing on the right and diminished right lower extremity strength and sensory examination (Tr.

7

339-4, Dr. Halphen); weakness in her right leg with worsening of her symptoms with prolonged sitting or standing such that she would be unable to work full-time (Tr. 390, Dr. Davis); persistent right sided lumbar radiculopathy clinically in the L4-L5 nerve root distributions with some tenderness of the spine and right paravertebral region and straight leg raise testing positive on the right side (Tr. 382, Dr. Eidelman); a decreased range of motion for flexion, extension and lateral bending as well as tenderness to palpation in the lower lumbar paraspinal muscles on the left (Tr. 385, 388, Associates in Family Care); neurological exam revealing a loss of the right ankle jerk but otherwise normal (Tr. 399, Dr. Zwibelman); and tenderness in the right SI region, very limited flexion, positive straight leg raise testing on the right and mild sensory changes on the right leg in an L5 distribution (Tr. 473-74, Neurosurgery of South Kansas City).

(Pl. Br. 11-12). She concludes by arguing that had the ALJ and the Appeals Council "properly evaluated Plaintiff's chronic pain and lumbar radiculopathy status post lumbar laminectomy syndrome with continuing disc displacement and protrusion L4-L5 and L5-S1, they would have determined Plaintiff was totally disabled for the reason that she was unable to sustain full-time work at even a sedentary level of exertion." Id. at 12.

The Commissioner argues that the ALJ accurately summarized the record. (Comm'r Br. 3). She argues that Plaintiff does not explain how referring to Plaintiff's multiple back impairments as a disorder of the spine minimized the impairment's severity. (Comm'r Br. 3). She points out that the decision notes examinations showing diminished sensation, reduced strength, difficulty getting on and off the exam table, difficulty squatting and arising, positive straight leg raise, decreased range of motion in her back, and tenderness. Id. at 3-4. She points out that the medical record also reports many "largely normal functional findings" and that many of the records Plaintiff claims the ALJ improperly discounted are those the ALJ specifically cited and discussed, and an

8

ALJ need not discuss every piece of evidence. Id. at 4 (citing Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). She argues that Plaintiff is merely asking the court to reach a different conclusion than that reached by the ALJ. Id. at 5. Finally, she argues that the additional evidence submitted to the Appeals Council also supports the ALJ's decision because it "demonstrate[s] essentially no functional changes between February 2013 and November 2014." Id. at 6.

The court finds no error in the ALJ's consideration of the medical record. He did not err or minimize the severity of Plaintiff's back impairments by labeling them collectively "disorder of the spine," and as so labeled, finding them severe within the meaning of the Act at step two of the sequential evaluation process. First, the Commissioner uses the term of art, "disorders of the spine" to describe a group of disorders in Listing 1.04, any one of which might be found so severe at step three as to be conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). The ALJ specifically considered Listing 1.04 at step three and found that Plaintiff's impairments do not meet or equal that Listing, and Plaintiff does not argue otherwise.

Second, the ALJ specifically considered the relevant documentary evidence in a section of his decision titled "Disorder of the spine," and in that consideration noted

evidence of neural foraminal narrowing, lumbar surgeries, disc protrusion, positive straight leg raising, decreased range of motion, sensory changes, radiculopathy, numbness, tingling, weakness, and a history of lumbar disc disease. (R. 19-20). The decision is clear that although the ALJ did not find Plaintiff's disorder of the spine disabling, he did learn Plaintiff's own version of the facts relevant to his decision. He did not fail his duty of inquiry, and although he did not find the evidence as limiting as Plaintiff suggests and desires, he did not minimize it. And, the ALJ fairly summarized the evidence--both that supporting his decision, and that which was contrary to it. As the Commissioner points out, the ALJ's summary included both the evidence noted above which suggests limitations and that which suggests that the limitations are not of disabling severity, including no evidence of an assistive device for ambulation, intact peripheral pulses, ability to bend 8 inches to the floor, 4/5 strength in the right lower extremity, intact and symmetrical deep tendon reflexes, only mild difficulty with orthopedic maneuvers, no obvious foot drop or atrophy, normal gait, normal motor strength, "only mild sensory changes on the right leg," bilateral weight bearing, a "fairly normal" range of motion of the lumbar spine with "only some" tenderness, 5/5 motor strength, epidural injections and surgery had "good results," denial of numbness, weakness, and tingling on one exam, normal sensory and motor function with no focal deficits, leg raises were negative on one exam. (R. 19-20).

It was in this context that the ALJ explained, "Overall, Dr. Halphen's physical examination of the claimant was grossly normal, with grossly normal motor, sensory and

reflexes, with only some deficits noted upon exam. The claimant does appear to retain a high degree of functioning physically." (R. 19). He explained that on August 13, "Overall, the claimant's physical examination was grossly normal, but she did have some deficits as noted above." (R. 20). He concluded after summarizing the relevant evidence:

> The claimant's physical examination in December 2013, like her exam in August 2013, was grossly normal with some deficits, but overall her level of functioning physically improved. Despite the claimant's grossly normal physical exams during her medical treatment and her consultative examination, the claimant would reasonably have some work based functional limitations, consistent with the residual functional capacity outlined above.

(R. 20). While Plaintiff disagrees with this conclusion, she has not shown that it is unsupported by the record evidence. Plaintiff objects to the use of the term "grossly normal" in describing her examination findings, but the ALJ limited and explained his use of that term in the decision and although Plaintiff disagrees with his characterization, the record evidence supports his usage as explained.

Moreover, the new and material evidence presented to the Appeals Council is consistent with the record evidence before the ALJ. Therefore, as the Appeals Council found in its denial of review, "the additional evidence does not provide a basis for changing the Administrative Law Judge's decision." (R. 2). Although an express analysis by the Appeals Council of the new and material evidence presented to it "would be helpful to judicial review," that is not required by the applicable statutes or regulations, and because the Council did not analyze it, this "court's only option [is] to conduct a substantial-evidence review by assessing the entire agency record, including" the

11

additional evidence presented to the Council. Vallejo v. Berryhill, 849 F.3d 951, 955-56 (10th Cir. 2017) (citing Martinez, 444 F.3d at 1207-08; and O'Dell, 44 F.3d at 858-59).

First, Dr. Davis's letter opinion is insufficient to change the ALJ's decision. The facts stated by Dr. Davis regarding Plaintiff's condition had already been acknowledged in the decision. (R. 390). Beyond those facts, Dr. Davis's opinion is a single sentence stating his opinion regarding the ultimate issue of disability--"I feel her symptoms are severe to the point that she would be unable to work a full-time job." Id. As such, the opinion would be accorded no special significance because it is on an issue reserved to the Commissioner. Moreover, Dr. Davis's opinion is unaccompanied by any specific functional limitations or explanation why her limitations would preclude work activities.

Review of the remaining additional evidence reveals it is consistent with the earlier records in the administrative record. In fact, some of the additional records are dated within the period covered by the earlier records, and some of the records predate Plaintiff's amended alleged onset date by more than two years. Physical examinations in the additional evidence are quite similar to and consistent with the physical examinations contained in the records before the ALJ. And, they reveal that when Dr. Zwibelman discovered that Plaintiff was "trying to obtain disability," he stated, "I explained to her that she really does not have neurologic deficits that would support disability." (R. 423).

There is nothing in the additional evidence that would require the ALJ to reach a different conclusion, that evidence is similar to and consistent with the evidence before the ALJ. Therefore, that evidence does not provide a basis to change the ALJ's decision.

12

To be sure, there is evidence in the record before the ALJ and in the additional evidence provided to the Appeals Council that would support a finding of disability, but Plaintiff does not point to evidence which requires such a finding, and the evidence supports the ALJ's decision. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## IV. The Credibility Determination

Plaintiff implies that the ALJ erred in failing to affirmatively link his credibility findings to the record evidence. (Pl. Br. 15). She argues that the reasons given for his credibility determination "were either factually inaccurate or inadequate to meet the applicable legal standard." Id. at 16. She argues that her MRI results and physical examinations were abnormal and she consistently remained on prescribed medications. Id. She argues that the ALJ erroneously insinuated Plaintiff was taking hydrocodone without physician approval when he stated that there was no evidence she had been to a physician between December, 2013 and the date of the hearing, October 2014, and that

her December 2013 treatment notes did not list hydrocodone as a medication prescribed for Plaintiff. Id. at 16-17. She argues that, to the contrary, hydrocodone was continually prescribed as a maintenance medication either by Dr. Davis or Dr. Clough. Id. at 17. She argues that the ALJ erroneously picked and chose evidence supporting his credibility determination rather than considering the totality of the evidence as Tenth Circuit law requires, and failed to affirmatively link his findings to substantial evidence. (Pl. Br. 17-18). She argues that the ALJ did not explain why the limits Plaintiff described were unsupported or how the "assessments" of the physicians "did not fully corroborate Plaintiff's testimony." Id. at 18. Finally, she argues that contrary to the ALJ's determination, "the fact that Plaintiff was forced to reduce her work to part-time did not logically establish that she had no memory or concentration problems. Id.

The Commissioner argues that the ALJ reasonably evaluated the credibility of Plaintiff's allegations, and that even if Plaintiff's argument regarding hydrocodone "had any merit, it would not be enough to overcome the ALJ's detailed analysis of the record" because one factor is insufficient to reject a credibility determination where the balance of the analysis is supported by substantial evidence. (Comm'r Br. 9) (citing Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004); and Pickup v. Colvin, 606 F.App'x 430, 432-34 (10th Cir. 2015)). She argues that Plaintiff does not identify evidence that she had trouble with memory or concentration, and that the ALJ's discussion of the evidence was accurate. Id. at 10. Finally, she argues that the ALJ was accurate when he noted that the record did not show any physician visits after December 2013, and that the records of that

visit did not identify hydrocodone as one of her prescribed medications. Id. at 11. In her Reply Brief, Plaintiff argues that the Commissioner's argument that Plaintiff was self-medicating with hydrocodone was not raised by the ALJ and is no more than a post hoc justification for the credibility finding. (Reply 4).

The court's review of credibility determinations is deferential. They are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing an ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

The court's review begins with the decision at issue and involves consideration whether it is supported by substantial evidence in the record as a whole. The ALJ provided his reasons for discounting Plaintiff's allegations of limitations resulting from her symptoms. (R. 21-22). He found that Plaintiff's physical examination findings were grossly normal, her MRI findings before the 2012 redo-laminectomy only demonstrated

15

minimal findings, her treatment provider in December 2013 stated that she had "good results" after her surgery, and if her pain was as debilitating as alleged, one would expect her to seek medical attention more often. (R. 21). He noted that during treatment in December 2013 Plaintiff reported her back pain was "moderate, and non-radiating." Id. He noted that Plaintiff testified she takes hydrocodone 4 times a day, but that there was no medical evidence she had seen a physician since December 2013 and in the notes of that visit hydrocodone was not listed as one of her prescribed medications. Id. at 21-22. He found no medical evidence of memory or concentration problems as Plaintiff testified, and noted that Plaintiff continued to work part-time in skilled work as a graphic designer for almost four years after her alleged onset date. Id. at 22. He noted that Plaintiff never sought emergency room treatment or injections for relief from her migraine headaches. Finally he found that Plaintiff's representative at the hearing "asked many leading questions," and that no treating physician ever opined that Plaintiff is disabled. Id.

Giving the ALJ's credibility determination due deference, the court finds no error. With one notable exception, the bases given by the ALJ to discount Plaintiff's allegations of symptoms are supported by the record evidence. That one exception is the ALJ's finding that Plaintiff's "MRI findings prior to her 2012 redo-laminectomy only demonstrated minimal findings." (R. 21). Earlier in his decision, the ALJ summarized the February 2012 MRI results as showing "mild right-sided neural foraminal narrowing with no effacement despite a broad-based disc protrusion." (R. 20). While the ALJ's finding is correct, the MRI finding upon which it is based also states that "[t]here is a

16

recurrent broad-based right paracentric disc protrusion which extends into the right lateral recess and posteriorly displaces the right L5 and S1 nerve roots." (R. 322). So while there is no effacement of the L4 nerve root, the L5 and S1 nerve roots are actually <u>displaced</u>. And, the "Impression" section of that MRI finds "[r]ecurrent broad-based right paracentric disc protrusion at L4-L5 causing posterior displacement of the right L5 nerve root in the lateral recess." (R. 323) (italics omitted). Clearly the evidence will not support the ALJ's finding that the MRI "only demonstrated minimal findings." (R. 21).

Nevertheless, the court finds that this error was harmless. As the ALJ noted, the February 2012 MRI was performed before Plaintiff received a redo-laminectomy, which, as the ALJ found, her December 2013 treatment notes described as providing "good results." (R. 385). Moreover, although an MRI in October 2014 recognized "progression of degenerative disk disease at L4-5," it also found, "There is no longer a focal right-sided component of protrusion at this level, but there may be a greater mild diffuse disk protrusion here. No other significant disk protrusion or high-grade spinal stenosis is seen." (R. 392). While the February 2012 MRI results do not provide a basis to discount Plaintiff's allegations of symptoms, the redo-laminectomy thereafter arguably produced good results and an MRI in 2014 showed no displacement of the nerve roots and confirmed no other significant disc protrusions or high-grade spinal stenosis. The question, then, is whether "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." <u>Branum</u>, 385 F.3d at 1274. The court finds it is.

17

As discussed above, the ALJ explained his use of the term "grossly normal," and that usage is supported by the record evidence. There is no error in using this as a basis for discounting Plaintiff's allegations. Plaintiff's assertion that Plaintiff consistently remained on her medications does not blunt the force of the ALJ's finding that if her pain were as debilitating as alleged "One would reasonably assume that she would seek out medical attention more often." (R. 21).

Plaintiff objects to the ALJ's finding that she had not seen a physician since December 2013 and the treatment notes of that visit did not reveal that hydrocodone was one of her prescribed medications despite her testimony that she takes it four times a day. (Pl. Br. 16-17). She argues that this is the ALJ's insinuation that she was taking the medication illegally without a prescription, and she cites record evidence for the proposition that hydrocodone was continually prescribed by either Dr. Davis or Dr. Clough. Id. However, as the ALJ found, the record before him did not indicate that Plaintiff had seen a physician since December 2013. The record evidence cited by Plaintiff does not negate the ALJ's finding that there was no evidence of being prescribed hydrocodone between at least December 2013, and the date of the hearing. Most of the evidence cited by Plaintiff in this regard relates to treatment notes before December 2013 (R. 268, 328, 352, 355, 356, 360, 367, 371, 432, 434, 437), and the other two records cited are dated after the hearing date. (R. 397) (October 16, 2014); (R. 473) (November 3, 2014). In her Reply Brief, Plaintiff argues that the Commissioner introduced this issue as "a new argument not raised by the ALJ," and that it was "no more than a post hoc

justification for the ALJ's aforementioned credibility finding." (Reply 4). However, it was Plaintiff that first argued that the ALJ's rationale was merely an insinuation of unlawful self-medication. (Pl. Br. 16-17). The Commissioner is clearly permitted to respond to Plaintiff's argument.

Plaintiff's argument that the ALJ failed to analyze credibility using the regulatory credibility factors, based his analysis only on facts supporting his determination, and did not take into account contrary evidence is unavailing. As Plaintiff argues, the law in the Tenth Circuit requires that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Huston, 838 F.2d at 1133) (quoted in Plaintiff's Brief at 17-18). The bases for the ALJ's discounting Plaintiff's credibility clearly relate to both the regulatory factors and the judicially recognized factors for evaluating credibility, and therefore demonstrate that the ALJ considered those factors in his analysis. And, he specifically stated that he had considered Plaintiff's allegations of symptoms "based on the requirements of 20 C.F.R. 404.1529 and SSR [(Social Security Ruling)] 96-4p and 96-7p." (R. 18). Although the ALJ did not specifically name each relevant factor, Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff's argument that her continued part-time work until 2014 "did not logically establish that she had no memory or concentration problems" (Pl. Br. 18), is without merit. While the ALJ's analysis does not <u>conclusively establish</u> that Plaintiff had no memory or concentration problems, as he explained, the fact that she was able to work part-time in skilled work as a graphic designer suggests that she did not have such problems, and there is no medical evidence suggesting that she had such problems. (R. 22). Plaintiff does not cite record medical evidence contrary to the ALJ's finding.

Plaintiff has shown no error requiring remand in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 22nd day of September 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**